# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

GAIL A. NEDRICK,

      Plaintiff,

v.                                      **Civil Action No. 3:19cv202**

SOUTHSIDE REGIONAL
MEDICAL CENTER, *et al.,*

      Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on three motions:

    (1)    Defendant Southside Regional Medical Center's ("Southside") Second Motion to Partially Dismiss Plaintiff's Complaint (the "Partial Motion to Dismiss"), (ECF No. 21);

    (2)    Southside's Second Motion to Partially Strike Plaintiff's Complaint (the "Partial Motion to Strike"),[1] (ECF No. 22);[2] and,

    (3)    Plaintiff Gail A. Nedrick's Motion to Correct Name (the "Motion to Correct"), (ECF No. 30).

In a single filing, Nedrick responded to the Partial Motion to Dismiss and the Partial Motion to Strike. (ECF No. 24.) Southside replied in a single reply. (ECF No. 26.) Southside responded to the Motion to Correct, (ECF No. 33), but Nedrick did not reply and the time to do so has expired.

---

[1] Southside included in the Partial Motion to Dismiss and the Partial Motion to Strike a notice consistent with the requirements set forth in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Civil Rule 7(K). The Roseboro Notice informed Nedrick that she had twenty-one (21) days to respond to the motions, and that failure to respond could result in dismissal of her claims. Nedrick timely responded.

[2] Southside filed the same document as the Motion to Dismiss and the Motion to Strike and filed a single Memorandum in Support, (ECF No. 23), of these motions.

These matters are ripe for adjudication. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331(a)[3] and 28 U.S.C. § 1367.[4] For the reasons stated below, the Court will grant the Partial Motion to Dismiss and grant in part and deny in part the Partial Motion to Strike. The Court will also deny the Motion to Correct.

## I. Factual and Procedural History

### A. Factual Background[5]

Nedrick brings this action against Southside, her former employer, alleging that Southside fired her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621–34. (Compl. 3, ECF No. 4.) Nedrick also claims that Wendy Barley, the Laboratory Director at Southside, defamed her. (*Id.* 8.)

Nedrick asserts that from "January 1986 until February 2005" she worked at Southside "as Assistant Supervisor night shift in the Chemistry department, day shift." (Compl. Ex. 5

---

[3] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a). The Complaint alleges that Southside violated Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e to 2000e-17, and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621–634.

[4] The Court exercises supplemental jurisdiction over Nedrick's defamation claim pursuant to 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

[5] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For the purpose of the Rule 12(b)(6) Motion to Dismiss, "a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011)).

"Facts" 1, ECF No. 4-5.)[6]  From "2005 until 2016," Nedrick states that she "was unable to work." (*Id.*)  She maintains that during this time she took steps "at rehabilitation from a chronic systemic infection and blindness from cataract, to prepare to re-enter the work force." (*Id.*)

In the summer of 2018, Nedrick asserts that Southside "listed more than 10 job openings in the laboratory for Medical Technologists" and that she "applied for four different positions, but noted that [she] would be able to work any of them." (*Id.*)

The Assistant Laboratory Director interviewed Nedrick "the last week of August." (*Id.*) Nedrick asserts that "[t]he first time speaking with Wendy Barley, the Laboratory Director, was via telephone around September 22nd," when Barley told Nedrick that Nedrick "was only being offered the PRN nightshift position, and that [she] could 'take it or leave it.'" (*Id.* (presumably quoting Barley).)

Nedrick asserts that once she began her position at Southside, "[o]rientation lasted two to five days." (*Id.*)  She maintains that "[m]ore time may have been taken to complete only these onboarding tasks partly because non-solicited, random interactions from former peers and hospital staff." (*Id.*)

Nedrick maintains that she "had no problem with the work" and that "[w]hen [she] finished [her] assigned work and/or onboarding information, [she] took time to familiarize

---

[6] When Nedrick filed her request to proceed *in forma pauperis*, she did not include Exhibit 5.  As the Court's docket reflects, on May 2, 2019, after the Court granted Nedrick's request, docketed her Complaint, and directed the Clerk to issue the Summons, the Clerk added this document as an additional exhibit to Nedrick's Complaint.

Because the initial Summons did not include Exhibit 5, the Court struck it.  (June 21, 2019 Order 1, ECF No. 15)  The Court also directed the Clerk to reissue the Summons "attaching the Complaint, (ECF No. 4), including all exhibits and the additional documents that the Clerk docketed on May 2, 2019." (*Id.*)  The second Summons as to Southside was returned executed and Southside filed the instant motions in response.

Because Southside received Exhibit 5 with the second Summons and filed the instant motions with knowledge of the facts included in Exhibit 5, the Court will utilize the facts included in Exhibit 5 to decide the Partial Motion to Dismiss and the Partial Motion to Strike.

[herself] with the computers and their systems." (*Id.* 2.) Nedrick states that she "asked numerous questions to management to clarify while [she] did so." (*Id.*) She avers that "[a]ll the feedback from the staff showing [her] the laboratory's and instrument's computer systems was always positive and they . . . expressed confidence that [she] was capable [of] working on [her] own." (*Id.*) During this time Nedrick "was asked to stay overtime 2 evenings." (*Id.*) Nedrick claims that Southside's "Microbiology Department [also] asked [her] about working with them, because someone else would be retiring in December." (*Id.*)

Before Nedrick could speak with Barley about working with the Microbiology Department, Southside terminated her employment at "the end of day nine." (*Id.*) Nedrick maintains that she "did not lose or misplace, mislabel or misidentify anything. [She] was never late resulting specimens in the computers or late releasing results back to the floor." (*Id.*) She avers that "[e]very step of [her] workflow can be scrutinized by checking the computers for work done in the area during my work hours." (*Id.*) Nedrick states that she "asked in [her] termination interview about complaints, and was assured no one complained about [her], [her] speed, or quality of work." (*Id.*) She asserts that Barley told her that Southside, "was letting [her] go because [Barley] felt that [Nedrick] was not a 'good fit' in the lab." (*Id.*) Barley also told Nedrick that Nedrick "did not do anything wrong, but [she] was slow and not keeping up with [her] work." (*Id.*) Barley, on behalf of Southside issued an Employee Counseling/ Disciplinary Action Notice (the "Notice") to Nedrick regarding her termination that explained in full:

> Gail's hire date was on October 22, 2018. During the past two weeks, there have been multiple occasions that have been noted where she is unable to maintain the workflow at any reasonable pace, even giving allowance for the fact that this was training time. There is enough concern that I feel that having Gail on staff in our laboratory has turned out not to be a good fit, and thus Gail is being terminated from her position at this

4

time. I wish Gail the best and thank her for many previous years of service in the laboratory field.

(Compl. Ex. 2 "Notice" 1, ECF No. 4-2.) Another person signed the Notice as a "Supervisor/Witness." (*Id.*)

Nedrick claims that "[t]hree younger people and students near graduation had job interviews [her] last week of work." (Facts 2.) She asserts that Southside's "laboratory has experienced excessive employee turnover from retirement" and that Southside "want[ed] [to] avoid losing younger, potential recruits."[7] (*Id.*)

### B.   Procedural History

Nedrick, proceeding *pro se* and *in forma pauperis*, filed this Complaint for Employment Discrimination against Southside and Community Health Systems.

The Court granted Nedrick *in forma pauperis* status and directed the Clerk to file Nedrick's Complaint and to issue the summons. (ECF No. 2.) The summons as to Community Health Systems was returned unexecuted. (ECF No. 6.) Southside received the summons and responded by filing two partial motions to dismiss and a partial motion to strike. (ECF Nos. 7–9.) Nedrick responded to the motions, (ECF No. 13), and Southside replied, (ECF No. 14).

After the Parties fully briefed these motions, the Court struck the initial summons and denied the pending motions as moot when it recognized that "[d]ue to a clerical error, the [s]ummons did not include the correct attachments with the initial service." (June 21, 2019

---

[7] Nedrick attempts to add several facts in her response to the Partial Motion to Dismiss. "[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Because Southside received notice of the facts included in Exhibit 5 when the Court reissued the Summons, the Court will consider the facts in Exhibit 5. The same cannot be said for the facts Nedrick adds in her Response to the Partial Motion to Dismiss. Therefore, the Court cannot consider the additional factual allegations contained in Nedrick's Response to the Partial Motion to Dismiss in deciding these motions.

Order 1–2, ECF No. 15.) The Court further directed that the summons issue to both Defendants with the Complaint as well as all exhibits and additional documents. (*Id.* 1.)

After the Clerk issued the corrected summons, the second summons as to Community Health Systems was returned unexecuted. (ECF No. 20.) Southside, however, received the summons and filed the instant Partial Motion to Dismiss and Partial Motion to Strike. The Partial Motion to Dismiss seeks to dismiss Nedrick's Title VII and defamation claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[8] The Partial Motion to Strike seeks to strike Nedrick's request for compensatory and punitive damages pursuant to Federal Rule of Civil Procedure 12(f).[9] Nedrick responded to both motions and Southside replied.

Nedrick then filed the Motion to Correct seeking to correct the name of the second defendant. In response, Southside states that "although [Southside] denies that it is liable to [Nedrick], [Southside] does not deny that it is the one and only proper party defendant. [Southside] represents that it employed [Nedrick], and none of the other entities mentioned . . . as potential Defendants . . . employed her." (Resp. Mot. Correct 4, ECF No. 33.) Nedrick did not reply to Southside's response and the time to do so has expired.

## II. Obligation to Construe *Pro Se* Pleadings Liberally

District courts have a duty to construe *pro se* pleadings liberally. *Bracey v. Buchanan,* 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). A *pro se* plaintiff must nevertheless allege facts sufficient to state a cause of action. *Id.* (citation omitted). The Court cannot act as a *pro se* litigant's "advocate and develop, *sua sponte,* statutory and constitutional claims that the [litigant] failed to

---

[8] Rule 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[9] Rule 12(f) states, in relevant part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

clearly raise on the face of [the] complaint." *Newkirk v. Circuit Court of Hampton*, No. 3:14cv372, 2014 WL 4072212, at *1 (E.D. Va. Aug. 14, 2014).

The Court will first address the Partial Motion to Dismiss. It will then turn to the Partial Motion to Strike. Finally, it will address the Motion to Correct.

### III. Partial Motion to Dismiss

In the Partial Motion to Dismiss, Southside seeks dismissal of Nedrick's Title VII and defamation claims. It does not seek dismissal of Nedrick's ADEA claim. The Court will address the Title VII and defamation claims in turn.

### A.     Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Francis*, 588 F.3d at 193. The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79; *see also Kensington*, 684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *Kolon Indus., Inc.*, 637 F.3d at 440)). This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

B.     The Court Will Dismiss Nedrick's Title VII Claim

Because Nedrick fails to state facts to support her Title VII claim and concedes that she "marked the wrong place," the Court will dismiss her Title VII claim. (Resp. Partial Mot. Dismiss 7, ECF No. 24.)

Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer— . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To raise a Title VII claim, a plaintiff must allege facts sufficient to demonstrate: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated

employees outside the protected class." *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015) (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)) (dismissing appeal and remanding to district court upon holding that the district court's order did not constitute a final order). Although "a Title VII plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, . . . factual allegations must be enough to raise a right to relief above the speculative level." *Forgus v. Mattis*, 753 Fed. Appx. 150, 152 (4th Cir. 2018) (internal quotation marks omitted) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In her Complaint, Nedrick checked the box to indicate that she brought her claims pursuant to Title VII. (Compl. 3.) However, she does not include any allegations as to discrimination based on her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In response to the Partial Motion to Dismiss, Nedrick concedes that she "marked the wrong place." (Resp. Partial Mot. Dismiss 7.) Because Nedrick includes no factual allegations to support a Title VII claim and states that she did not attempt to bring such a claim, the Court will grant the Partial Motion to Dismiss as to the Title VII claim.

## C. The Court Will Dismiss Nedrick's Defamation Claim

In addition to her Title VII claim, Nedrick asserts that Barley, Southside's Laboratory Director, defamed her. In her Complaint, Nedrick points to two sets of statements Barley made, one oral and one written. First, Nedrick claims that Barley orally "said that [Barley] was letting [Nedrick] go because [Barley] felt that [Nedrick] was not a 'good fit' in the lab. Wendy Barley then told [Nedrick] that [Nedrick] did not do anything wrong, but [Nedrick] was slow and not keeping up with [her] work." (Facts 2.) The Court will refer to this oral set of statements as

"Defamation Claim One." Second, Nedrick asserts that part of Barley's subsequent written explanation for Nedrick's termination as set forth in the Notice "is not true." (*Id.*) Specifically, Nedrick looks to Barley's written statements that "[d]uring the past two weeks, there have been multiple occasions that have been noted where [Nedrick] was unable to maintain workflow at any reasonable pace. Having Gail on staff in our lab turned out to be not a good fit." (*Id.*) The Court will refer to this written set of statements as "Defamation Claim Two." The Court will analyze Defamation Claim One and Defamation Claim Two in turn, but ultimately concludes that it will dismiss both of Nedrick's defamation claims.

1.    **Legal Standard:  Defamation**

In Virginia,[10] a plaintiff claiming defamation[11] must allege the "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). "Publication occurs when an actionable statement is transmitted to some third person so as to be heard and understood by such person." *Suarez v. Loomis Armored US, LLC,*

---

[10] A court exercising diversity jurisdiction applies the substantive law of the forum state and federal procedural law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938). In Virginia state court, a plaintiff must plead the words spoken by the defendant *in haec verba*, or by using the exact words spoken or written. *Fed. Land Bank of Balt. v. Birchfield*, 3 S.E.2d 405, 410 (Va. 1939) ("Good pleading requires that the exact words spoken or written must be set out in the declaration *in haec verba*. Indeed, the pleading must go further, that is, it must purport to give the exact words.") Here, Nedrick filed her case in federal court.

Under federal standards, a plaintiff may, but need not, state the exact words spoken by the defendant to maintain a cause of action for defamation. *See Doe v. Roe*, 295 F. Supp. 3d 664, 678 (E.D. Va. 2018) (finding that "Virginia pleading standards are not controlling [in a case filed in the Eastern District of Virginia]; rather it is Rule 8 [of the Federal Rules of Civil Procedure], that governs the outcome of [a] motion to dismiss.") Rule 8(a) requires that a plaintiff set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

[11] Under Virginia law, defamation encompasses both libel (written defamation) and slander (spoken defamation). *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 784 n.2 (4th Cir. 2018) (stating that "[u]nlike most states, Virginia makes no distinction between actions for libel and those for slander." (quoting *Fleming v. Moore*, 275 S.E.2d 632, 635 (1981))).

No. 3:10cv690, 2010 WL 5101185, at *2 (E.D. Va. Dec. 7, 2010) (citation omitted) (internal quotation marks omitted).

"To prevail on a claim for defamation, a party must prove by a preponderance of the evidence that the allegedly defamatory statements are both false and defamatory, so 'harm[ing] the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her].'" *Cook, Heyward, Lee, Hopper, & Feehan, P.C. v. Trump Va. Acquisitions LLC*, No. 3:12cv131, 2012 WL 1898616, at *3 (E.D. Va. May 23, 2012) (first alteration in original) (quoting *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). For a statement to be defamatory, "the allegedly defamatory words must carry 'the requisite defamatory "sting" to one's reputation.'" *Dragulescu v. Va. Union Univ.*, 223 F. Supp. 3d 499, 507 (E.D. Va. 2016) (quoting *Schaecher v. Bouffault*, 772 S.E.2d 589, 594 (Va. 2015)). "Such language is of the kind that 'tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous.'" *Id.* (quoting *Schaecher*, 772 S.E.2d 589, 594).

"If the statements at issue are either not defamatory, objectively true, or protected expressions of opinion," no actionable defamation exists. *Cook, Heyward, Lee, Hopper, & Feehan, P.C.*, 2012 WL 1898616, at *3 (citing *Am. Commc'ns Network v. Williams*, 568 S.E.2d 683, 686 (Va. 2002)). Nonetheless, "[d]efendants can be held liable for defamation 'when a negative characterization of a person is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [listener].'" *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, No. 7:09cv00472, 2011 WL 1327396, at *11 (W.D. Va. Apr. 6, 2011) (quoting Robert D. Sack, *Sack on Defamation: Libel, Slander, and Related*

*Problems* § 4:3.2 (4th ed. 2010)). "The test for determining whether facts that may be actionable defamation have been implied is 'whether a reasonable listener would take [the speaker] to be basing his [or her] "opinion" on knowledge of facts of the sort than can be evaluated in a defamation suit.'" *Id.* (first alteration in original) (quoting Sack, *supra*, § 4:3.2). "In determining whether the words and statements complained of in the instant case are reasonably capable of the meaning ascribed to them by innuendo, every fair inference that may be drawn from the pleadings must be resolved in the plaintiff's favor." *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 592 (Va. 1954).

The requisite intent a plaintiff must prove in a defamation action depends upon the plaintiff's status as a public or private figure and the damages sought. *Suarez*, 2010 WL 5101185, at \*2. Under Virginia law, a private individual such as Nedrick must make a showing that Barley "published the statement knowing that it was 'false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Sepmoree v. Bio-Med. Appls. Of Va., Inc.*, No. 2:14cv141, 2014 WL 4444435, at \*7 (E.D. Va. Sep. 8, 2014) (quoting *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724–25 (Va. 1985)).

Even if a statement constitutes defamation under Virginia law, a defendant may avoid liability for the statement by showing that a privilege, such as qualified privilege, applies. *See Dragulescu*, 223 F. Supp. 3d at 508 (citing *Gazette Inc.*, 325 S.E.2d 713).

### 2. Because Barley Did Not Publish the Spoken Statements in Defamation Claim One, They Do Not Constitute Defamation

In Defamation Claim One, Nedrick alleges that Barley's oral comments to her when Barley terminated Nedrick constitute defamation. In this defamation claim, Nedrick asserts that Barley orally "said that [Barley] was letting [Nedrick] go because [Barley] felt that [Nedrick]

was not a 'good fit' in the lab. Wendy Barley then told [Nedrick] that [Nedrick] did not do anything wrong, but [Nedrick] was slow and not keeping up with [her] work." (Facts 2.) Because Nedrick makes no allegation that Barley published these statements, they cannot be deemed defamation.

To state a defamation claim under Virginia law, the plaintiff must allege "(1) publication of (2) an actionable statement with (3) the requisite intent." *Jordan*, 612 S.E.2d at 206. "Publication occurs when an actionable statement is transmitted to some third person so as to be heard and understood by such person." *Suarez v. Loomis Armored US, LLC*, No. 3:10cv690, 2010 WL 5101185, at *2 (E.D. Va. Dec. 7, 2010) (citation omitted) (internal quotation marks omitted).

Here, Nedrick does not allege that any third person heard Barley's oral statements. In contrast, Nedrick proffers that Barley only said the statements in Defamation Claim One to Nedrick. Because no third person "heard and understood" these oral statements, Nedrick fails to allege sufficient facts to meet the first prong of the defamation test. *Suarez*, 2010 WL 5101185, at *2; *see Jordan*, 612 S.E.2d at 206. For this reason, even if these statements are untrue, Barley's oral set of statements in Defamation Claim One cannot constitute defamation.

### 3. Even if the Court Deemed Barley's Written Statements in Defamation Claim Two to be Defamation, Qualified Privilege Would Protect These Written Statements

In Defamation Claim Two, Nedrick asserts that two of Barley's written statements in the Notice regarding Nedrick's termination are "not true." (Facts 2.) Specifically, Nedrick looks to Barley's statements that "[d]uring the past two weeks, there have been multiple occasions that have been noted where [Nedrick] was unable to maintain workflow at any reasonable pace. Having Gail on staff in our lab turned out to be not a good fit." (*Id.*) Nedrick attached the

Notice, which includes Barley's full explanation, as an exhibit to her Complaint. Even if these statements could be considered defamation, qualified privilege would protect Southside from Nedrick's Defamation Claim Two. This is so because Barley made these written statements in the Notice relating to Nedrick's termination and no allegations exist that a person without an interest or duty in those statements saw them. Therefore, qualified privilege attaches to these statements and Southside is immune from Nedrick's defamation suit as it pertains to these written statements.

Under Virginia law, qualified privilege "attaches to '[c]ommunications between persons on a subject in which the persons have an interest or duty.'" *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013) (brackets in original) (quoting *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)). A plaintiff can overcome a claim of qualified privilege by showing clear and convincing evidence of common-law malice. *Doe*, 295 F. Supp. 3d at 676–77; *Goulmamine v. CVS Pharm. Inc.*, 138 F. Supp. 3d 652, 664–65 (E.D. Va. 2015). "Malice sufficient to overcome a qualified privilege is 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'" *Fuste v. Riverside Healthcare Ass'n, Inc.*, 575 S.E.2d 858, 863 (Va. 2003) (quoting *Gazette*, 325 S.E.2d at 727). "[T]he Supreme Court of Virginia has held 'that employment matters are occasions of privilege in which the absence of malice is presumed.'" *Dragulescu*, 223 F. Supp. 3d at 508 (quoting Larimore, 528 S.E.2d at 122)).

Here, Barley and another person, a "Supervisor/Witness," signed the Notice. (Notice 1.) Nedrick states that she also received the Notice and the Notice contains a line on which Nedrick should sign. (*Id.*; Facts 2.) Even if the Court presumed the written statements in the Notice constituted defamation, because each of the signatories to the Notice "have an interest or duty" in

14

the Notice, qualified privilege would attach to them. *Cashion*, 749 S.E.2d at 532. Namely,

Barley, as the Laboratory Director, and the other signatory, as the witness, have a professional

interest in the statements contained in the Notice as Nedrick's supervisors and the people

directing Nedrick's termination. Nedrick also has an interest in the statements because she is the

employee against whom Southside took an employment action. Nedrick does not assert that any

other person saw the Notice.[12] For these reasons, qualified privilege attaches to the statements in

the Notice and Southside is immune from a defamation suit as to these statements unless Nedrick

can show Southside acted with malice.

    As noted, qualified privilege may be overcome by showing that Barley made the

statements with malice. However, "the Supreme Court of Virginia has held 'that employment

matters are occasions of privilege in which the absence of malice is presumed.'" *Dragulescu*,

223 F. Supp. 3d at 508 (quoting Larimore, 528 S.E.2d at 122)). Nedrick does not assert that

Barley made these statements out of "personal spite, or ill-will, independent of the occasion on

---

    [12] In response to the Partial Motion to Dismiss, Nedrick seems to claim that others besides Barley and the witness saw the Notice because Southside included it in her employee file. (Resp. Partial Mot. Dismiss 2, 9.) Although "it is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss," *Mylan Labs, Inc.*, 770 F. Supp. at 1068 (quoting *Car Carriers, Inc.*, 745 F.2d at 1107), even if the Court were to include this additional information in its evaluation of Defamation Claim Two, qualified privilege would still protect Barley's written statements in the Notice.

    Virginia law extends qualified privilege "to communications between employers—or the employer's 'proper representatives'—discussing former employees with prospective employers, and is only overcome by a showing of malice." *Zarrelli v. City of Norfolk*, No. 2:13cv447, 2014 WL 2860295, at *10 (E.D. Va. June 23, 2014) (citing *Ortiz v. Panera Bread Co.*, No. 1:10cv1424, 2011 WL 3353432, at *4–*5 (E.D. Va. Aug. 2, 2011); *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000)).

    Generally, only a prospective employer and Southside, or their proper representatives, would have access to Nedrick's employee files. Nedrick has not alleged that any other individual had access to her file. For this reason, even if the Court were to consider Nedrick's additional factual allegations, qualified privilege would likely protect Southside from liability for Barley's allegedly defamatory comments. As discussed above, Nedrick's allegations that Southside interviewed younger candidates during her last week of work and Southside's alleged desire to "avoid losing younger, potential recruits" do not rise to the level of malice necessary to overcome this qualified privilege, even at the motion to dismiss stage.

which the communication was made." *Fuste*, 575 S.E.2d at 863. Nedrick asserts only that the

statements contained in the Notice are "not true," that Southside interviewed younger candidates

during her last week of work, and that Southside wanted to "avoid losing younger, potential

recruits."[13] (Facts 2.) Even under the standard of review afforded to Nedrick as a *pro se*

plaintiff, this does not overcome the presumptive lack of malice in employment matters. Nedrick

fails to overcome the qualified privilege afforded to the written statements in the Notice that

make up Defamation Claim Two.[14] Therefore, Southside is immune from suit as to these

statements.

---

[13] In response to the Partial Motion to Dismiss, Nedrick asserts that: "Many [s]tudents and other young people looking for [l]ab. position[s] had interviews with Ms. Barley, and toured the lab. during that week. That is why my termination was an egregious [a]buse of [d]iscretion, [a]rbitrary and [c]apricious, and done with [r]equisite [i]ntent in violation of the ("ADEA")." (Resp. Partial Mot. Dismiss 9.) No legal standard exists suggesting that when a court examines a defamation claim it should utilize the abuse of discretion or arbitrary and capricious standards to determine whether a defendant acted with malice to overcome qualified privilege.

The Court cannot consider these additional factual allegations in considering the Partial Motion to Dismiss. *Mylan Labs, Inc.*, 770 F. Supp. at 1068. However, even if the Court could consider these allegations, they would not defeat qualified privilege, even at this early stage. Even a *pro se* plaintiff must allege facts sufficient to support his or her claim and Nedrick does not provide sufficient *factual* allegations to support her *legal* conclusions. *Bracey*, 55 F. Supp. 2d at 421. For this reason, even if the Court were to consider the additional factual allegations in Nedrick's response to the Partial Motion to Dismiss, it would likely find that qualified privilege protects Southside from liability for Barley's written and oral statements.

[14] In response to the Partial Motion to Dismiss Nedrick asserts that "[b]oth the Assistant Laboratory Director and the Chemistry Department Supervisor were also in the room" when Barley terminated Nedrick. (Resp. Partial Mot. Dismiss 9.) If the Court could consider this allegation when evaluating Defamation Claim One, which it cannot, it would likely meet the publication requirement. Even still, qualified privilege would likely protect Southside from liability for these oral statements included in Defamation Claim One as well.

Specifically, even if the Assistant Laboratory Director and the Chemistry Department Supervisor heard the oral statements Barley made to Nedrick, all participants would have an "interest or duty" in the statements Barley made. *See Dragulescu*, 223 F. Supp. 3d at 508. Nedrick fails to allege the malice required to overcome this qualified privilege for the same reasons as those stated with regard to Barley's written statements in the Notice that make up Defamation Claim Two.

Because, based on the allegations in the Complaint, Barley did not publish the oral set of statements in Defamation Claim One and qualified privilege protects Barley's written set of statements in the Notice that make up Claim Two, neither Barley's oral nor written statements support Nedrick's defamation claims. For this reason, the Court will grant the Partial Motion to Dismiss as to Nedrick's defamation claims.[15]

## IV. Partial Motion to Strike

In the Partial Motion to Strike Southside seeks to strike Nedrick's request for punitive and compensatory damages. Because only Nedrick's ADEA claim survives and the ADEA does not provide for recovery of punitive damages, the Court will grant in part the Partial Motion to Strike. The Court will construe Nedrick's pursuit of compensatory damages as one for liquidated damages and will deny the Partial Motion to Strike in that regard.

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

"The purpose of the ADEA is to return a victim of age discrimination to 'the position he [or she] would have been in but for the unlawful discrimination.'" *Kashif v. Amerigroup Corp.*, No. 2:10cv239, 2010 WL 11530358, at *2 (E.D. Va. Nov. 30, 2010) (citing *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 965 (4th Cir. 1985)). The United States Court of Appeals for the Fourth Circuit has stated that "[p]unitive damages are not available under the ADEA." *Fariss*, 769 F.2d

---

For these reasons, even if the Court were to consider Nedrick's additional allegations in her Response to the Partial Motion to Dismiss, the Court would likely find that Barley's oral set of statements in Defamation Claim One do not suffice to state a claim for defamation.

[15] In the Partial Motion to Dismiss, Southside also moves to dismiss Nedrick's request for punitive damages for her defamation claim. (Mem. Supp. Partial Mot. Dismiss 9.) Because the Court dismisses Nedrick's defamation claim, it necessarily follows that Nedrick's claim for damages on that claim will be dismissed as well.

at 967 n.11 (citing *Walker v. Pettit Constr. Co.*, 605 F.2d 128, 130); *Kashif*, 2010 WL 11530358, at *2. "[A]n ADEA [p]laintiff who is able to establish that age discrimination was willful may be entitled to liquidated damages; however, this precludes general compensatory and punitive damages." *Kashif*, 2010 WL 11530358, at *2 (citing *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 1036, 1039 (5th Cir. 1977)).

In her Complaint, Nedrick seeks "compensatory and punitive damages not less than $500[,]000" and "relief of the cost of court and . . . prejudgment interest on the principal sum awarded [by] the jury from November 1, 2018 at a rate of 16% per year." (Facts 2.) Because Nedrick's sole remaining ADEA claim cannot support a request for punitive damages, the Court will grant the motion to strike as to Nedrick's request for punitive damages. *Fariss*, 769 F.3d at 967 n.11. However, Nedrick claims that Southside interviewed "[t]hree younger people and students near graduation" during her last week of work and that Southside's laboratory "has experienced excessive employee turnover from retirement and want[s] [to] avoid losing younger, potential recruits." (Facts 2.) Based on Nedrick's *pro se* status and because she may be entitled to liquidated damages if she can show that Southside willfully discriminated against her based on her age, the Court will liberally construe this as an allegation that Southside willfully discriminated against her because of her age. The Court will construe her request for compensatory damages as one for liquidated damages instead. *Kashif*, 2010 WL 11530358, at *2 (deeming ADEA plaintiff's request for compensatory and punitive damages to be a request for liquidated damages).

For these reasons, the Court will grant the Partial Motion to Strike as Nedrick's request for punitive damages and deny it as to Nedrick's request for compensatory damages. However,

the Court will construe Nedrick's request for compensatory damages as one for liquidated damages. The Court now turns to Nedrick's Motion to Correct.

### V. Motion to Correct

In the Motion to Correct Nedrick requests that the Court allow her to correct the name of the second defendant in this action. Because Southside concedes its status as the proper defendant, the Court will deny the Motion to Correct and allow the case to proceed against the proper defendant: Southside.

A brief discussion of this case's history provides support for the Court's decision to deny the Motion to Correct. The Court granted Nedrick *in forma pauperis* status and directed the clerk to docket her Complaint and to issue the Summons. Nedrick's Complaint named two defendants: Southside and Community Health Systems. The summons as to Community Health Systems went unexecuted.

When the Court ordered the Clerk to reissue the summons, it also ordered Nedrick to provide updated service information for Community Health Systems. (June 21, 2019 Order 1, ECF No. 15.) Nedrick complied and provided information for "Community Health Systems Professional Services Corporation." (Nedrick Resp. 1, ECF No. 17.) The second summons was also returned unexecuted.

Nedrick later filed a "Notice to the Court of Defendant's Delay Accepting Service" (the "Notice of Delay"). (ECF No. 28.) In the Notice of Delay, Nedrick claimed that Counsel for Southside also represented Community Health Systems, the second defendant, and Counsel for Southside refused to accept service for Community Health Systems. The Court ordered Southside to respond, (Oct. 2, 2019 Order 2, ECF No. 29), and Nedrick filed the instant Motion to Correct.

Southside timely responded to the Court's Order and explained that Community Health Systems, Inc. is not the same entity as Community Health Systems Professional Corporation or CHSPSC, LLC. (Southside Resp. 3–4, ECF No. 32.) Southside explained that "[t]here is no listing in the Virginia State Corporation Commission's database for Community Health Systems, Inc., but the database of the Tennessee Secretary of State does contain a listing for that entity." (*Id.* 4.) Counsel for Southside maintained that "[t]he undersigned counsel do not currently represent either of those entities in this action." (*Id.*) Southside also clarified that "Community Health Systems Professional Services Corporation is no longer an active corporation; it was converted to a limited liability company (CHSPSC, LLC) under Delaware law several years ago." (*Id.*) It stated that "CHSPSC, LLC (a limited liability company) also is a separate entity from Community Health Systems, Inc. (a corporation), and it also has its own listing on the State Corporation Commission Database." (*Id.*) Counsel for Southside asserted that "[t]he undersigned counsel do not currently represent CHSPSC, LLC in this matter." (*Id.* 4–5.)

In its response to both this Court's Order and Nedrick's Motion to Correct, Southside concedes that it represents the proper defendant in this matter. (*Id.* 5; Resp. Mot. Correct 4.) Specifically, it states that "it employed [Nedrick], and none of the other entities mentioned herein as potential [d]efendants . . . employed her." (*Id.*)

Because Southside concedes that it is the proper defendant and given the history of service issues in this matter, the Court does not wish to delay this matter further and will deny the Motion to Correct. The Court will dismiss this case as to Community Health Systems and allow Nedrick's ADEA claim to proceed against Southside, the proper defendant.

## VI. Conclusion

For the foregoing reasons, the Court grants the Partial Motion to Dismiss and dismisses Nedrick's Title VII and defamation claims. Nedrick's ADEA claim remains. The Court also grants in part and denies in part the Partial Motion to Strike. Specifically, it strikes Nedrick's claim for punitive damages and deems Nedrick's request for compensatory damages as one for liquidated damages which would require Nedrick to show that Southside willfully discriminated against her based on her age. The Court denies the Motion to Correct and allows Nedrick's ADEA claim to proceed against the proper defendant, Southside.

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date: 2/3/2020
Richmond, Virginia